FILED

2016 Jun-02  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TIMOTHY T. HOLMES,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:15-cv-01383-RDP** |
| | } | |
| **SHERIFF MIKE HALE, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

### I.      Introduction

This case is before the court on Defendant Daniel Billings's Second Motion To Dismiss Plaintiff's Amended Complaint (Doc. # 33), filed May 11, 2016.  The Motion is fully briefed. (Docs. # 33, 35, 36).  After careful review, and for the reasons stated below, the court concludes the Motion is due to be granted.

### II.      Background and Procedural History

Plaintiff filed his Amended Complaint seeking relief for alleged (1) violations of his Fourth Amendment rights and (2) assault and battery under Alabama law.   (Doc. # 13). Defendant Billings responded by filing his motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (Doc. # 33).  "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true."  *Mays v. United States Postal*

---

[1] Defendant Billings previously filed a partial motion to dismiss, which this court granted.  (Docs. # 28, 32).  Upon granting that motion, the court dismissed both Plaintiff's federal claims against Defendant Billings in his official capacity and the state law assault and battery claim against him.  (Docs. # 31, 32).  In light of that ruling, only Plaintiff's federal claim against Defendant Billings in his individual capacity remained in this case.  (*See* Doc. # 32).

*Service*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996).  Thus, for the purpose of resolving the Motion, the court treats the following facts alleged in the Amended Complaint (Doc. # 13) as true.

## III.   Plaintiff's Allegations

Plaintiff makes the following allegations in his Amended Complaint.  On June 20, 2014, Plaintiff was in his home wearing only pajama pants.  (Doc. # 13 at ¶ 4). When he heard banging on his front door, Plaintiff got up, "saw some people running through the backyard," and heard his back door crash.  (*Id.* at ¶ 5).  Plaintiff was frightened so he hid in a closet.  (*Id.* at ¶ 6). Shortly thereafter, Plaintiff was "pulled out from the closet by two of the three officers," and was thrown to the ground without being questioned or shown a warrant.  (*Id.* at ¶ 7).  One of the officers, Deputy Billings (a large man), placed his knee on Plaintiff's back while another unnamed officer placed his boot on Plaintiff's neck and ground his face into the carpet.  (*Id.* at ¶ 8).  The third unnamed officer twisted Plaintiff's arms in order to handcuff them.  (*Id.*).

When Plaintiff asked why he was being arrested, the officers told him to "[s]hut [u]p" and "further pressed down on [Plaintiff] with their knee and foot, and even ground his face into the floor."  (Doc. # 13 at ¶ 9).  Finally, the officers told Plaintiff that he was the subject of "a warrant," even though one was never presented to him.  (*Id.* at ¶ 10).  While still barely dressed, Plaintiff was "dragged" from his home and "thrown into a patrol car" in the presence of his neighbors.  (*Id.* at ¶ 11).

The officers took Plaintiff to the "Jefferson County Police Station," where he lost consciousness.  (Doc. # 13 at ¶ 12).  Once he regained consciousness, Plaintiff's cellmates told him he was "dragged" into the cell.  (*Id.*).  Plaintiff requested medical attention but was denied it

by both an officer and a nurse.  (*Id.* at ¶ 13).  After an hour, Plaintiff was released without explanation, and was not given a copy of the arrest warrant or incident report.  (*Id.* at ¶ 14).

Plaintiff thereafter filed this lawsuit under 42 U.S.C. § 1983, seeking compensatory damages from Deputy Billings and the other arresting officers claiming he was the victim of excessive force and that the circumstances of his arrest constituted a state-law assault and battery.[2]  (Doc. # 13).  Deputy Billings previously moved for dismissal of the claims against him in his official capacity and the state-law assault and battery claim.  (Docs. # 28).  The court granted that motion and dismissed those claims.  (Docs. # 31, 32).  In his present Motion, Deputy Billings argues that qualified immunity shields him from the remaining excessive force claim against him in his individual capacity.  (Docs. # 33, 36).

## IV.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Intl Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

---

[2] Additionally, Plaintiff asserted a respondeat superior cause of action against Defendant Sheriff Mike Hale ("Sheriff Hale").  (*Id.*).  Sheriff Hale was dismissed from this case on January 21, 2016.  (Doc. # 17).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

## V.    Analysis

To state a claim for relief under Section 1983, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). "The traditional definition of acting under color of state law

requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (citations omitted).  Although the "Alabama Constitution does not designate deputy sheriffs as members of the executive department or as state agents," Alabama deputies are "legally an extension of the sheriff." *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525-26 (11th Cir. 1990).  And, because Alabama sheriffs are state officials clothed with the authority of state law, *see id.* at 1525, deputies similarly hold that same authority.  *See id.* at 1525-26.

### A.   Deputy Billings's Assertion of Qualified Immunity

Deputy Billings asserts that qualified immunity applies and protects him from Plaintiff's Section 1983 claim for excessive force.[3]  (Docs. # 33, 36).  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It "is intended to 'allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010) (hereinafter, "*Brown*") (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  Thus, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818.

The Eleventh Circuit has instructed courts to utilize a multi-step, burden-shifting analysis to determine if an official is entitled to qualified immunity.  Accordingly, in order for Deputy

---

[3] Plaintiff argues that, because the court ruled on Deputy Billings's first Motion To Dismiss, the question of his immunity in and from this case is "exhausted" and "has been resolved."  (Doc. # 35 at 12).  However, the issue of qualified immunity was not raised in Deputy Billings' prior dismissal motion.  (*See* Docs. # 28, 30).  Deputy Billings has not yet filed an answer to Plaintiff's Amended Complaint, and nothing in the language of Rule 12 limits a party to a single motion in response to a pleading.

Billings to establish that he is entitled to qualified immunity, he "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. . . . Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010) (quoting *Lee*, 284 F.3d at 1194). To determine whether Plaintiff has met his burden, "[t]he threshold inquiry . . . is whether [P]laintiff's allegations, if true, establish a constitutional violation." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (in turn citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001))). Additionally, Plaintiff may defeat qualified immunity by showing that clearly established law dictates, "that is, truly compel[s] (not just suggest[s] or allow[s] or raise[s] a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Sanders v. Howze*, 177 F.3d 1245, 1250 (11th Cir. 1999) (citations and quotations omitted). The facts presented in cases decided by the Supreme Court or the Eleventh Circuit "need not be the same as the facts of the immediate case, but they do need to be materially similar." *Id.* (citation omitted).

Whether an official's actions fall within the scope of discretionary authority is a two-fold inquiry: (1) the government employee must be "performing a legitimate job-related function," (2) "through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (citation omitted). "The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert Intl., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (citations omitted). Because "[a]rrests and attempted arrests are classified as discretionary functions," Deputy Billings was acting within the scope of his discretionary authority. *Telfare v. City of Huntsville*, 841 So.2d 1222, 1228 (Ala.

6

2002); *see also Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1221 (M.D. Ala. 2012) (finding officers used authorized force during temporary detainment, questioning, and eventual arrest of plaintiff).

    **B.**    **Deputy Billings Is Entitled To Qualified Immunity Here**

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown*, 608 F.3d at 737 (quoting *Lee*, 284 F.3d at 1197 (in turn citing *Graham v. Connor*, 490 U.S. at 394-95 (1989) (hereinafter, "*Graham*")).  But, "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"  *Id.* (quoting *Lee*, 284 F.3d at 1197 (in turn quoting *Graham*, 490 U.S. at 396)); *see also Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) ("In the Eleventh Circuit, we recognize that the typical arrest involves some force and injury.").  Nevertheless, although some force is permitted in effecting an arrest, whether that force is reasonable depends on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* at 737-38 (quoting *Vinyard*, 311 F.3d at 1347).

"'[I]n determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted.'"  *Hawkins v. Carmean*, 562 Fed. Appx. 740, 743 (11th Cir. 2014) (*per curiam*) (quoting *Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (in turn quoting *Lee*, 284 F.3d at 1198)) (alteration in *Draper*).  A court must look to the "totality of the circumstances" and judge the use of force "from the perspective of a reasonable officer on the

7

scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. at 396.  In balancing the need for force against an arrestee's constitutional rights, a court "must evaluate several factors, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Vinyard*, 311 F.3d at 1347 (quoting *Graham*, 490 U.S. at 396).   However, "[e]ven if an officer uses excessive force, []he is entitled to qualified immunity if 'an objectively reasonable officer in the same situation could have believed the use of force was not excessive.'" *Hawkins*, 562 Fed. Appx. at 743 (quoting *Brown*, 608 F.3d at 738). "The only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009) (citing *Graham*, 490 U.S. at 396).

Here, Plaintiff argues that qualified immunity cannot apply to Detective Billings because there was no warrant for a home arrest, and a reasonable officer would know of the need for a warrant.  (*See* Doc. # 35).  But, Plaintiff confuses an illegal arrest claim with one for excessive force.  In the Eleventh Circuit, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Bashir v. Rockdale Cty., Ga.*, 445 F.3d 1323, 1331 (11th Cir. 2006) (quotations and citations omitted). "When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest." *Id.* at 1332.  Indeed, "where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, [an] unlawful arrest claim." *Id.*  However, Plaintiff has not asserted a discrete claim of false arrest; he only alleges a

single cause of action for excessive force.[4]  (Doc # 13 at ¶¶ 7-14, 17-21).  His contentions that qualified immunity cannot apply to Deputy Billings because the officers conducted a warrantless home arrest are misplaced.[5]  The inquiry concerns whether the actual use of force by Deputy Billings was excessive.

Applying Eleventh Circuit case law here, the court concludes that Deputy Billings did not utilize excessive or a "gratuitous use of force" during Plaintiff's arrest.  *Brown*, 608 F.3d at 738 (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008)) ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *see also, e.g.*, *Nolin v. Isbell*, 207 F.3d 1253, 1258 n. 4 (11th Cir. 2000) (force not excessive when officer grabbed plaintiff, shoved him against a vehicle, pushed knee into plaintiff's back, and pressed plaintiff's head against van); *Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (permissible force when handcuffs affixed too tightly during arrest for disorderly conduct); *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460 (11th Cir. 1997) (force

---

[4] To be sure, in *William v. Sirmons*, 307 Fed. Appx. 354, 357-58 (11th Cir. 2009) (*per curiam*), the Eleventh Circuit construed a claim for false arrest from a single cause of action for excessive force.  Significantly, the allegations there indicated and the plaintiff *presented evidence* that the plaintiff actually raised a separate illegal arrest claim.  *Sirmons*, 307 Fed. Appx. at 357-58.  Thus, the court observed, if an arrest is illegal, "then there is no basis for any threat or any use of force, and an excessive force claim would always arise but only collaterally from the illegal stop or arrest claim."  *Id.* at 360 (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1170-71 (11th Cir. 2000)).  Here, however, regardless of whether Deputy Billings and his co-deputies showed Plaintiff a warrant, they informed him at the time of his arrest that there was a warrant for his arrest.  (Doc. # 13 at ¶¶ 10, 15).  And, this case is presently at the motion to dismiss stage; the proceedings in *Sirmons* stemmed from a denial of summary judgment.  *See Sirmons*, 307 Fed. Appx. at 356-57.

Further, although the issue has not been raised, the court finds it instructive that the Supreme Court has held that even if officers have an arrest warrant for one party and reasonably but mistakenly arrest another party, "then the arrest of the second party is a valid arrest."  *Hill v. Cal.*, 401 U.S. 797, 802 (1971) (citation omitted); *see also Rodriguez*, 280 F.3d at 1349-50 (stating that the plaintiff did not cite to and the Eleventh Circuit could not find any cases in the Circuit or from the Supreme Court "that has ever held an officer, under any set of circumstances, liable for misidentifying an arrestee when *executing* a *valid* arrest warrant").  Plaintiff fled into a closet and hid when the officers appeared; that they may have made an incorrect arrest of what reasonably could have appeared to be a fleeing suspect is "understandable and the arrest a reasonable response to the situation facing them at the time."  *Hill*, 401 U.S. at 804.

[5] Plaintiff's argument that Deputy Billings is not immune to the state cause of action is misplaced and perplexing.  (Doc. # 35).  That state law claim of assault and battery has already been dismissed and is not presently before the court.  (*See* Docs. # 31, 32).

used deemed permissible when officers "slammed" plaintiff against wall, kicked his legs apart, made him raise his arms above his head, and pulled his wallet from his pants, while looking for and questioning suspect); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (not excessive force to arrest plaintiff for building code violation by pushing him against wall and applying chokehold while affixing handcuffs despite no resistance).   Indeed, although Deputy Billings is a big man, his actions followed that of a reasonable police officer using minor force to arrest a suspect.   The Amended Complaint is clear that Plaintiff was hiding in a closet. To be sure, he was half-naked and lacked a weapon.   But, it is appropriate to infer that reasonable arresting officers would have been unaware of these facts until *after* Plaintiff was arrested and a search occurred.   In addition, at the point of his arrest, a reasonable police officer could have been concerned that the suspect had fled within the house to a closet space and may (or may not) have had access to weapons.   *See Graham*, 490 U.S. at 397 ("the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them").   Throwing Plaintiff on the ground and using body weight to subdue him was not an excessive use of force in the circumstances of effectuating this particular arrest.   *Cf., e.g.*, *Post*, 7 F.3d at 1559-60.   Therefore, Deputy Billings is entitled to qualified immunity on the excessive force claim.

## VI.   Fictitious Party Pleading Does Not Save the Amended Complaint from Dismissal

Plaintiff has indicated that the Amended Complaint also is brought against two fictitious parties.   (*See* Doc. # 13).   Fictitious party pleading generally is not permitted in federal court, unless a plaintiff describes the defendants with enough specificity to determine their identities. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("We have created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at

the very worst, surplusage.'" (quoting *Dean v. Barber*, 951 F.3d 1210, 1215 n. 6 (11th Cir. 1992))).  The descriptions of the fictitious parties here do not rise to that level.  (*See* Doc. # 13 at ¶ 8).  Accordingly, the existence of two fictional parties does not save this case from dismissal.

**VII.    Conclusion**

For these reasons, the court concludes that Deputy Billings's Second Motion to Dismiss Plaintiff's Amended Complaint, in Part (Doc. # 33) is due to be granted, and Plaintiff's remaining claim against Deputy Billings is due to be dismissed from this case.  A separate order shall be entered.

**DONE** and **ORDERED** this June 2, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE